## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| HAZEL WARFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:19-cv-02403-JPM-cgc |
| v. | ) | |
| | ) | |
| MEMPHIS CITY EMPLOYEES CREDIT | ) | |
| UNION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This Truth in Lending Act ("TILA") case is before the Court on the Parties' Cross

Motions for Summary Judgment.[1]  (ECF Nos. 11, 25.)  Defendant Memphis City Employees

Credit Union filed its Motion for Summary Judgment on October 2, 2019.  (ECF No. 11.)

Defendant moves the Court pursuant to Federal Rule of Civil Procedure 56 to grant judgment in

its favor, arguing that Plaintiff Angela Warford's TILA claim cannot proceed because no

reasonable consumer would find the Security Agreement at issue confusing.  (Id. at PageID 38.)

Plaintiff filed her Motion for Summary Judgment on November 12, 2019.  (ECF No. 25.)

Plaintiff moves the Court pursuant to Rule 56 to grant judgment in her favor.  (Id.)  Plaintiff

argues that because "Defendant did not provide a due date for the $133.16 irregular payment as

---

[1] Plaintiff and Defendant agree that the case should be decided on cross-motions for summary judgment. (ECF No. 22.)

the TILA requires . . . [and] because there is no genuine dispute of material fact about [Defendant's liability]," judgment should be entered in her favor.  (Id. at PageID 146.)

For the reasons set forth below, Defendant's Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion for Summary Judgment is **GRANTED**.

## I.      BACKGROUND

### A.      *Undisputed Facts*

The following facts are undisputed for purposes of summary judgment.

On or about December 27, 2018, Plaintiff Hazel Warford entered into a Loan Security Agreement with Defendant Memphis City Employees Credit Union to finance the purchase of a 2006 Audi A4 automobile.  (Defendant's Statement of Undisputed Facts ("Def. SOF"), ECF No. 28 at PageID 175; Security Agreement, ECF No. 1-1.)  Plaintiff purchased the vehicle for her own personal, family, and household use.  (Def. SOF, ECF No. 28 at PageID 175–76.)

The Agreement contains a TILA disclosure statement.  (Id. at PageID 176.)  The Agreement discloses an "annual percentage rate" of 13.69%, a "finance charge" of $2,370.43, an "amount financed" of $10,631.35, and a payment total of $13,623.16.  (Id.)  The disclosure also includes a payment schedule, which provides for seventy-one payments of $190.00 and one payment of $133.16.  (Id.)  The payment schedule includes a section entitled "When Payments Are Due," which indicates that payments are due "Bi-Weekly Skip Last Beginning 01/10/2019." (Agreement, ECF No. 1-1 at PageID 9.)  The schedule provides no other payment dates or payment information.  The Agreement includes a maturity date of December 23, 2021.  (ECF No. 15 at PageID 95.)

2

B.      *Plaintiff's Claims*

Plaintiff initiated this action on June 21, 2019.  (Complaint, ECF No. 1.)  Plaintiff alleges

that Defendant "failed to disclose the due date for the $133.16 payment" listed in the

Agreement's payment schedule, making it "impossible to determine what date the $133.16

payment is due."  (Id. ¶¶ 20–21.)  Plaintiff alleges that Defendant violated 15 U.S.C. § 1638(g)

and 12 C.F.R. § 226.18(g) when it failed to disclose "[t]he number, amount, and due dates or

periods of payments scheduled to repay the total of payments."[2]  (Id. ¶ 23.)  Specifically,

Plaintiff alleges that Defendant's failure to provide a corresponding due date for the $133.16

payment listed in the payment schedule violates the § 1638(g).  (Id. ¶¶ 25–27.)

## II.      LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact

would establish or refute an essential element of the cause of action or defense."  Bruederle v.

Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable

inferences in favor of the nonmoving party."  Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir.

2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of

material fact."  Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp.

---

[2] Plaintiff refers to 12 C.F.R. § 1026.18(g), but the appropriate C.F.R. provision applicable to § 1638(g)(6) is 12 C.F.R. § 226.18(g).

v. Catrett, 477 U.S. 317, 323 (1986)).  "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper."  Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted); see also Kalich v. AT&T Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

In order to "show that a fact is, or is not, genuinely disputed," both parties must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact."  Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"  Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'"  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531

(6th Cir. 2008), <u>abrogation recognized by</u> <u>Anderson v. City of Blue Ash</u>, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Johnson v. Memphis Light Gas & Water Div.</u>, 777 F.3d 838, 843 (6th Cir. 2015) (quoting <u>Liberty Lobby</u>, 477 U.S. at 251–52). Summary judgment "'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Rachells v. Cingular Wireless Employee Services, LLC</u>, No. 1:08 CV 02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." <u>Tingle v. Arbors at Hilliard</u>, 692 F.3d 523, 529 (6th Cir. 2012) (quoting <u>Liberty Lobby</u>, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position." <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 584 (6th Cir. 1992) (citing <u>Liberty Lobby</u>, 477 U.S. at 247–254; <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." <u>Rachells</u>, 2012 WL 3648835, at *2 (quoting <u>Thomas v. Christ Hosp. and Med. Ctr.</u>, 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. <u>See</u> <u>Mitchell</u>, 964 F.2d at 584–85.

### III.    ANALYSIS

#### A.    *The Positions of the Parties*

The Parties' cross-motions for summary judgment dispute one issue: whether the payment schedule failed to properly disclose a date for the single, seventy-second payment provided by the payment schedule.

Defendant asserts in both its Motion for Summary Judgment and its Response to Plaintiff's Motion that the Agreement's payment schedule does not violate the disclosure requirements of the TILA.  (See ECF No. 27 at PageID 168.)  Defendant asserts that no reasonable consumer would be confused by the Agreement's payment schedule.  (See Mot. for Sum. Judg., ECF No. 12 at PageID 42–44.)  Defendant asserts that the language of the payment schedule comports with the Federal Reserve Board's regulations interpreting the TILA's requirements.  (Id. at PageID 44–46.)  Defendant also asserts that Plaintiff has not asserted a claim challenging the specific language contained in the payment schedule, that is, the payment schedule's use of the term "skip last," and that, alternatively, the term does not violate the TILA. (ECF No. 27 at PageID 171–73.)

Plaintiff's Motion for Summary Judgment, her Response to Defendant's Motion for Summary Judgment, and her Reply assert the opposite.  (See ECF Nos. 14, 25, 30.)  Plaintiff argues that the Agreement's payment schedule fails to provide a payment date for the "irregular payment" falling outside of the designated seventy-one bi-weekly payments.  (ECF No. 25 at PageID 151–55.)  Plaintiff relies on the Federal Reserve Board's commentary to the TILA's implementing regulations, a recent case from the Middle District of Tennessee, and the Federal Reserve's sample disclosure forms.  (Id.)  Plaintiff also asserts that no reasonable consumer could discern the meaning of "Bi-Weekly Skip Last," nor could a reasonable consumer discern

6

the payment date of the irregular payment.  (Id. at PageID 155.)  Plaintiff asserts that she is

entitled to the TILA's maximum $2,000 statutory penalty.  (Id. at PageID 156–57.)  Finally,

Plaintiff asserts that Defendant cannot provide disclosures in two separate documents under the

TILA.  (See generally ECF No. 30.)

  **B.**  *Federal Rules of Civil Procedure 8 and 10*

  The Court first addresses whether Plaintiff asserted a claim challenging the payment

schedule's use of the term "skip last."  Federal Rule of Civil Procedure 8 provides that in order

to state a claim for relief, the complaint must provide "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The claim must provide

sufficient facts to support a plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556–57 (2007).  Under Federal Rule

of Civil Procedure 10(c), a "statement in a pleading may be adopted by reference elsewhere in

the same pleading or in any other pleading or motion," and "[a] copy of a written instrument that

is an exhibit to a pleading is a part of the pleading for all purposes."

  If the plaintiff raises a claim for the first time in her motion for summary judgment or in

response to a motion for summary judgment, she must move to amend her complaint under

Federal Rule of Civil Procedure 15(a) before she can assert the claim.  Davis v. Echo Valley

Condo. Ass'n, 945 F.3d 483, 496 (6th Cir. 2019).  Allowing otherwise would "subject[] a

defendant to 'unfair surprise,' because the defendant has no opportunity to investigate the claim

during discovery."  Id. (quoting M.D. ex rel. Deweese v. Bowling Green Indep. Sch. Dist., 709

F. App'x 775, 778 (6th Cir. 2017)).

  Defendant cannot assert that Plaintiff failed to raise her challenge to the use of the term

"skip last."  It is true that she did not mention it explicitly in her Complaint, but the Complaint

incorporated-by-reference the loan agreement that makes use of the term.  See Weiner v. Kalis & Co., 108 F.3d 86, 89 (6th Cir. 1997), rev'd on other grounds by Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002) (holding that Rule 10(c) allows courts to consider "certain pertinent documents" as part of the pleadings).  (See ECF No. 1-1.)  The Agreement is part of the Complaint, which challenges the adequacy of the date provided by the payment schedule for the seventy-second payment.  (Complaint, ECF No. 1 ¶¶ 20–21; Agreement, ECF No. 1-1.)  Given that the term "skip last" is included under the payment date portion of the payment schedule, it reasonably follows that Plaintiff's Complaint intended to challenge all information provided under the schedule's date of payment section.

Defendant also is not unfairly surprised by Plaintiff's challenge to the Agreement's use of the term "skip last"; Plaintiff's case puts at issue only one part of one document, which is exactly where the term "skip last" is used.  See Bowling Green, 709 F. App'x at 778 (noting that the purpose of the rule barring plaintiffs from raising new claims on summary judgment is to prevent defendants from being subjected to "unfair surprise," as "the defendant has no opportunity to investigate the claim during discovery").  Moreover, the Court's "ability to decide the case [is not] similarly undermined," given that Plaintiff's assertion that the term "skip last" violates the TILA's disclosure requirements has not prevented the "gravamen of the dispute" from being "brought frankly into the open for inspection by the [C]ourt."  Id. (quoting Swierkiewicz, 534 U.S. at 512–13.)  Defendant has been on notice of Plaintiff's challenge to the term "skip last" and its connection with her case since she filed the Complaint, and Defendant's Motion for Summary Judgment and Response to Plaintiff's Motion demonstrate that Defendant has been given ample opportunity to rebut Plaintiff's challenge to the term.

The Court therefore finds no reason to prevent Plaintiff from asserting this claim in her Motion for Summary Judgment.

C.       *The TILA's Disclosure Requirements*

1.       *Substantive Law*

The TILA "was specifically designed to remedy problems that had developed from the rapidly expanding use of consumer credit in the 1960s." Purtle v. Eldridge Auto Sales, Inc., 91 F.3d 797, 799–800 (6th Cir. 1996). The TILA is a "remedial statute" which was designed "to permit an individual consumer to recover for her injuries" and "to deter socially undesirable lending practices." Id. at 801. The TILA "promote[s] the informed use of credit by consumers by requiring meaningful disclosure of credit terms." Begala v. PNC Bank, Ohio, Nat. Ass'n, 163 F.3d 948, 950 (6th Cir. 1998). Courts are required to give the TILA "a broad, liberal construction in favor of the consumer." Id.

Consumers may bring a claim against their creditors for failure to comply with the statutory disclosure requirements of the TILA or any of the disclosure requirements imposed on creditors by the Act's implementing regulations. See 15 U.S.C. § 1640. "The Act is strictly enforced; 'once a court finds a violation of the TILA, no matter how technical, the court has no discretion as to the imposition of civil liability.'" Garl v. Genessee Valley Auto Mall, No. 16-13712, 2018 WL 994318, at *2 (E.D. Mich. Feb. 21, 2018) (quoting Purtle, 91 F.3d at 801). If the consumer proves the violation, she may recover statutory damages of twice the amount of the finance charge contained in the security agreement, bounded by a statutory minimum penalty of $200 and a statutory maximum penalty of $2000. 15 U.S.C. § 1640(a)(2)(A)(i); see also Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60 (2004); Boseman v. Prestige Auto Sales, Inc., No. 3:16–CV–728, 2017 WL 3172742, at *3 n.7 (M.D. Tenn. July 25, 2017).

The TILA delegates rulemaking authority to the Federal Reserve Board.  See Purtle, 91 F.3d at 800; see also 15 U.S.C. § 1604 ("The Bureau shall prescribe regulations to carry out the purposes of this subchapter.").  The Federal Reserve Board has promulgated regulations known together as Regulation Z that implement the TILA's disclosure requirements.  United States v. Petroff-Kline, 557 F.3d 285, 294 (6th Cir. 2009).  Courts "defer to the regulations interpreting the Act."  Begala, 163 F.3d at 950 (citing Ford Motor Credit Co. v. Milholin, 444 U.S. 555, 565 (1980)); see also Humphreys v. Bank of Am., No. 11-2514-STA-TMP, 2013 WL 1967955, at *7 (W.D. Tenn. May 13, 2013), aff'd, 557 F. App'x 416 (6th Cir. 2014) ("The Supreme Court has held that the Federal Reserve's interpretation of TILA and its requirements are worthy of deference so long as the Fed's interpretations are not 'irrational.'").  "[A]bsent some obvious repugnance to the statute," courts are to accept the Federal Reserve's interpretation of the TILA's disclosure requirements provided by Regulation Z.  Segrist v. Bank of New York Mellon For Certificateholders of CWABS, Inc. Asset-Backed Certificates Series 2003-2, 744 F. App'x 932, 937 (6th Cir. 2018) (quoting Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219 (1981)) (internal quotation marks omitted); see also Kenn v. JPMorgan Chase Bank, N.A., No. 15-cv-01806-WHO, 2015 WL 6089987, at *3 & n.3 (N.D. Cal. Oct. 16, 2015) (giving deference to the official staff commentary contained in 12 C.F.R. § 226, Supp. I, Sub. C, cmt. n. 17(c)(3)).

Regulation Z requires creditors to make TILA disclosures "clearly and conspicuously," and the disclosures must be "in writing, in a form that the consumer may keep."  12 C.F.R. § 226.17(a).  TILA disclosures must be "grouped together" and "shall be segregated from everything else . . . ."  Id.; see also Abel v. KeyBank USA, N.A., No. 1:03 CV 524, 2003 WL 26132935, at *7 (N.D. Ohio Sept. 24, 2003).

Whether a disclosure is clear and conspicuous is a question of law.  Hamm v. Ameriquest Mortg. Co., 506 F.3d 525, 529 (7th Cir. 2007); see also Boseman, 2017 WL 3172742, at *2. Courts apply an objective standard to determine whether a disclosure is clear and conspicuous, determining whether a reasonable consumer would be misled, confused or deceived by the disclosure.  See Dillard v. Thomasville Auto Sales, LLC, 221 F. Supp. 3d 677, 682 (M.D.N.C. Nov. 2, 2016) ("The adequacy of a lender's disclosure is determined on an objective standard, regardless of what the consumer actually believes the form means.").  It is not necessary for the consumer to prove that she "was actually misled or deceived by an ambiguous credit term in order to prevail."  Purtle, 91 F.3d at 800.

At issue in this case is the specific disclosure obligation imposed on creditors by § 1638(a)(6) of the TILA.  Section 1638(a)(6) of the TILA requires creditors to disclose the "number, amount, and due dates or periods of payments scheduled to repay the total of payments" when they enter into "consumer credit transactions."  15 U.S.C. § 1638(a)(6); see also 12 C.F.R. § 226.18(g) ("For each transaction, the creditor shall disclose . . . the number, amounts, and timing of payments scheduled to repay the obligation.").  The Federal Reserve Board's Interpretative Commentary to Regulation Z indicates that as a "[g]eneral rule," § 226.18(g) "requires creditors to disclose the timing of payments."  12 C.F.R. § Pt. 226, Supp. I, Subpt. C, cmt. n. 18(g)(4).  Creditors must also "list all of the payment due dates."  Id.  A creditor may disclose the payment dates by "specifying the 'period of payments' scheduled to repay the obligation," but, if the creditor does so, it "must disclose the payment intervals or frequency, such as 'monthly' or 'bi-weekly,' and the calendar date that the beginning payment is due."  Id.  "This information, when combined with the number of payments, is necessary to

define the repayment period and enable a consumer to determine all of the payment due dates."
Id.

More specifically, Plaintiff claims that the disclosed payment schedule contained in the Agreement includes an "irregular payment," that is, "a one-time payment not covered by the [Federal Reserve Board's] period of payments disclosure rule . . . ." Boseman, 2017 WL 3172742, at *2.  (See ECF No. 25 at PageID 151–55.)  Several courts from across the country have dealt with the date disclosure requirements for irregular payments that fall outside of a bi-monthly or bi-weekly payment schedule.  See, e.g., id.; Dillard, 221 F. Supp. 3d at 682–83; Larrabee v. Bank of Am., N.A., 714 F. Supp. 2d 562, 567 (E.D. Va. 2010).  The Federal Reserve Board has provided some guidance on the disclosure requirements for separate, independent payments set apart from a regular payment schedule in Forms H-11 and H-12 in Appendix H to Regulation Z.  See 12 C.F.R. § 226, app. H, Forms H-11 and H-12; see also Boseman, 2017 WL 3172742, at *2 (discussing forms H-11 and H-12).  Creditors are not required to use these forms, but they offer helpful examples of proper disclosures.  See 12 C.F.R. § 226.23(b)(1).

### 2.     Application

Upon review, the Court finds that the payment schedule at issue does not comply with the requirements of § 1638(a)(6) or § 226.18(g) of Regulation Z.  The payment schedule does not clearly and conspicuously provide the due date for the "irregular" payment set apart from the 71 bi-weekly payments provided by the payment schedule, as required by the TILA and Regulation Z.  (See ECF No. 1-1 at PageID 9.)  The Court agrees with the Middle District of Tennessee's reasoning in Boseman v. Prestige Auto Sales, Inc., which held that a failure to disclose a clear and discernible due date in a payment schedule violated the TILA.  2017 WL 3172742, at *2–3.

12

Regulation Z and § 1638(a)(6) require that a payment schedule containing an irregular payment set apart from a bi-weekly or bi-monthly payment schedule must clearly and conspicuously indicate the date on which that payment is due.  See 15 U.S.C. § 1638(a)(6) (creditors must disclose the "number, amount, and *due dates or periods of payments* scheduled to repay the total of payments" (emphasis added)); see also 12 C.F.R. § Pt. 226, Supp. I, Subpt. C, cmt. n. 18(g)(4) (creditors must also "list all of the payment due dates," so as to "enable a consumer to determine all of the payment due dates").  Although Regulation Z does not specify exactly how to disclose the date for irregular payments, the Court, construing the protections of the TILA and Regulation Z broadly in favor of the consumer, see Begala, 163 F.3d at 950, sees no reason why a payment schedule that provides for a payment set apart from a bi-weekly set of payments should not list its own, separate payment date.

The Agreement's payment schedule is similar to the payment schedule at issue in Boseman.  Both fail to provide a separate date for the final, irregular payment set apart from a bi-monthly or bi-weekly set of payments.  (Compare ECF No. 1-1 at PageID 9, with ECF No. 25 at PageID 154.)  Moreover, because the Court must construe the TILA and Regulation Z broadly in favor of the consumer, see Begala, 163 F.3d at 950, and given that the purpose of payment schedules is to reduce ambiguity and to prevent consumers "from having to guess or assume a disclosure's particular meaning," Boseman, 2017 WL 3172742, at *2, the Court finds that the term "bi-weekly skip last" does not provide the requisite clarity to allow the ordinary consumer to understand the exact due date of the final irregular payment.

This conclusion is supported by the sample forms provided by Regulation Z.  Defendant asserts that the forms deserve no deference, and that creditors can still comply with the TILA and Regulation Z without making use of these forms.  See supra Sec. III.A.  Defendant is correct that

these forms are not mandatory, and creditors are not required to format their disclosures in a manner identical to that of the forms provided by Appendix H.  See 12 C.F.R. § 226.23(b)(1). However, because the Federal Reserve Board's interpretations of the TILA and its regulations are deserving of significant deference, see Begala, 163 F.3d at 950, the Court views the guidance provided by Forms H-11 and H-12 as highly persuasive and instructive in determining the requirements necessary to comply with Regulation Z and the TILA.[3]

The forms provide two examples of appropriate disclosures:



---

[3] The Court does not find the interpretations of Regulation Z irrational.

14



12 C.F.R. § 226, app. H.  The first example and second example demonstrate that the first 71

payments provided by Plaintiff's Security Agreement met the requirements of Regulation Z and

the Federal Reserve Board's interpretations of Regulation Z.  Much like the disclosures in Forms

H-11 and H-12, the payment schedule provides a specific start date for 71 discrete payments that

must unambiguously be paid on a bi-weekly basis.  See 12 C.F.R. § Pt. 226, Supp. I, Subpt. C,

cmt. n. 18(g)(4).  Comparing these model form payment schedules to the payment schedule at

issue demonstrates the Agreement's payment schedule's lack of clarity with respect to the

second irregular payment:



Defendant argues that the "skip last" term is clear and meets the disclosure requirements of the TILA because it references a separate, secondary financing agreement between Plaintiff and Defendant apart from the TILA disclosure form containing the Agreement's payment schedule.  (See Response, ECF No. 27 at PageID 166, 171–72.)  Defendant relies on the Seventh Circuit's decision in Pridgeon v. Gates Credit Union, 683 F.2d 182 (7th Cir. 1982), and the Federal Reserve's Staff Interpretation of 12 C.F.R. § 226, see 12 C.F.R. § 226, Supp. I.  (Id. at PageID 172.)  The Court is not persuaded by Defendant's arguments.

The Seventh Circuit's decision in Pridgeon, which was decided in 1982, is not binding on this Court.  The decision also is not applicable to Plaintiff's case.  Pridgeon dealt with a situation in which the plaintiff entered into a separate agreement with her creditor, contained in a separate document, in which she requested that "$90 per week be deducted from her earnings to be applied to" the credit agreement.  683 F.2d at 190.  The Seventh Circuit held that "[i]f the debtor chooses to make more frequent payments for her convenience, that goes beyond the loan agreement and need not be disclosed by [the creditor.]"  Id.  It may be true that the TILA and Regulation Z did not require Defendant to include in the payment schedule the payments made per Plaintiff's secondary deduction agreement, but that finding has no bearing on the issue raised by Plaintiff with respect to her loan obligation: that the original payment schedule did not comply with the TILA's disclosure requirements by failing to provide a date for the last irregular payment.  Moreover, the secondary agreement referenced by Defendant provides no information about the "number, amount, and due dates or periods of payments" as required by the TILA.  See 15 U.S.C. § 1638(a)(6).  (See Secondary Deduction Agreement, ECF No. 28-1 at PageID 183.)

Defendant's own description of the payment structure is unclear as to the meaning of the term "skip last."  The payment schedule does not "clearly and conspicuously" confer the date of

the final, irregular payment to the reasonable consumer when Defendant's own "clear" interpretation embodies a complex payment structure cross-referencing two separate agreements, one of which was entered into months before Plaintiff signed the Agreement.  See 12 C.F.R. § 226.17(a); see also 12 C.F.R. § 226, Supp. I, Subpt. C, cmt. n. 17(a)(1) ("[W]hile the regulation requires no mathematical progression or format, the disclosures must be presented in a way that *does not obscure the relationship of the terms to each other*." (emphasis added)).  (See ECF No. 27 at PageID 172–74; see also ECF No. 30 at PageID 202–03, 206.)  Additionally, requiring a loan recipient to jump between two documents to understand the timing of the payment schedule would contradict the requirement that disclosures be "grouped" together.[4]  12 C.F.R. § 226.17(a)

---

[4] Many courts outside of the Sixth Circuit (and two courts within the Sixth Circuit) have required disclosures to be made on a single document, colloquially called the "one document" rule.  See, e.g., Abel, 2003 WL 26132935, at *7 (finding that a "specific index" that is not contained in a standard "federal box" form but that requires a consumer to "refer to a completely separate document" violates the TILA's and Regulation Z's requirements that creditor's disclosures be "grouped together"); see also Hughes v. Cardinal Fed. Sav. & Loan Ass'n, 566 F. Supp. 834, 841 (S.D. Ohio 1983) ("[D]isclosure of the variable interest rate was made in a separate document and because the document was not a specific disclosure form as contemplated by the Act, we conclude that defendant did not adequately disclose the terms of the variable interest rate applicable to plaintiffs' loans."); Lauletta v. Valley Buick, Inc., 421 F. Supp. 1036, 1040 (W.D. Pa. 1976) ("Regulation Z unequivocally requires that necessary disclosures shall be written and made together on one document.").  In the unpublished opinion Castle v. Rona Enters., Inc., 49 F. App'x 24 (2002), the Sixth Circuit appears to have indicated that disclosures need not be made in a single document. See id. at 25 ("The Castles cite no requirement that the payment schedule be disclosed in one place or one figure, nor are we aware of any . . . .").  A subsequent decision from the Southern District of Ohio, Hook v. Baker, 352 F. Supp. 2d 839 (S.D. Ohio 2004), appears to interpret Castle in a similar way.  Id. at 845 (finding that several documents presented to the plaintiff at the time of the purchase met the requirements of § 1638(a)(6)).  The facts dealt with by the Sixth Circuit in Castle do not readily apply to Plaintiff's case, as the credit transaction involved several documents with TILA disclosures contained in one document, although the disclosures were contained in two separate tables.  49 F. App'x at 25.  Plaintiff's case also is not factually analogous to Hook.  In that case, the creditor provided the plaintiff with three documents at the same exact time, i.e., at the time when plaintiff signed the agreement, that disclosed the exact "number, amount, and due dates of payments scheduled to repay the total of payments."  352 F. Supp. 2d at 845.  The secondary agreement referenced by Defendant provides nothing other than an authorization allowing the City of Memphis, her employer, to deduct $349.00 from her pay for payment of her loan obligation to Defendant, and it does not provide any information on the timing of the deductions.  (See ECF No. 28-1 at PageID 183.)  The Court finds more persuasive the Northern District of Ohio's decision in Abel v. KeyBank USA, N.A., which dealt with a situation more analogous to Plaintiff's Agreement than the credit agreement at issue in Hook.  See 2003 WL 26132935, at *7.  The Abel court found that the payment schedule at issue violated Regulation Z's requirement that disclosures be "group[ed] together" because it required the consumer to refer to "a completely separate document" to find the required disclosures.  Id.

17

The portions of the Federal Reserve's Staff Interpretations of Regulation Z cited by Defendant also do not affect the Court's finding with respect to meaning of the term "skip last." Defendant relies on the portion of Regulation Z's Staff Interpretation that deals with the modification of a credit agreement.  <u>See</u> 12 C.F.R. § 226, Supp. I, Subpt. C, 17(c)(1) ("Modification of obligation").  The interpretation states that any such modification "should not be reflected in the disclosures unless it rises to the level of a change in the terms of the legal obligation."  <u>Id.</u>  This interpretation in no way affects whether, at the time of the Agreement, the original term "skip last" and the payment schedule's omission of a clear payment date for the irregular payment meets the requirements of § 1638(a)(6) and Regulation Z.  Additionally, the payroll deduction agreement cited by Defendant was executed on July 6, 2018, months before Plaintiff entered into the Agreement; the secondary deduction agreement therefore cannot be construed as a "modification" of the Agreement's disclosures.  (<u>Compare</u> ECF No. 28-1 (dated "7/06/2018"), <u>with</u> ECF No. 1-1 at PageID 9 (dated "12/17/2018").)

The Court is also not persuaded by Defendant's argument that no reasonable consumer would misunderstand the meaning of the term "skip last" based on the information Plaintiff knew at the time she entered into the Agreement.[5]  (<u>See</u> ECF No. 27 at PageID 173.)  The Court does not consider Plaintiff's subjective understanding of the Agreement; it only considers whether a reasonable consumer would be misled or would misunderstand the final payment date for the irregular payment based on the Agreement's terms.  <u>See</u> <u>Purtle</u>, 91 F.3d at 800.  Even assuming that Plaintiff did not misunderstand the Agreement, that fact has no bearing on whether a

---

[5] Defendant provided the Court with the affidavit of one of its employees, Letisha Simmons.  (<u>See</u> ECF No. 28-1.)  Her affidavit explains a series of transactions and money transfers from Plaintiff's bank account to Defendant per the payroll deduction agreement executed in July 2018.  (<u>Id.</u>)  This information does not affect the Court's decision, as her affidavit solely goes to Plaintiff's subjective knowledge of the payments required by her agreement.

reasonable consumer presented with the payment schedule at issue would be misled or would misunderstand the timing of the final payment.  See Purtle, 91 F.3d at 800.

Defendant relies on a case from the Middle District of North Carolina, Dillard v. Thomasville Auto Sales, LLC, to support its argument.  (See ECF No. 27 at PageID 168–69.)  The credit agreement at issue in Dillard included a payment schedule that was "uniformly slightly misaligned" but that clearly indicated that the debtor was to make 19 payments of $220.00 and 1 payment of $155.03 to be paid either "Weekly Beginning" or "Monthly Beginning," and that commenced on "3/08/15" and "1/08/17," respectively.  221 F. Supp. 3d at 680.  The court found that the "only plausible interpretation is that the two lines in question belong in the rows in which the characters' lower halves sit, such that the first nineteen payments are to be made monthly beginning one month after closing and the twentieth payment is to be made one month after the nineteenth payment."   Id. at 682.  Despite the form's misalignment, the payment schedule allowed the consumer to discern the amounts, dates, and frequencies of the weekly and monthly payments.  Id. at 682–83.

The defects in the form at issue in the instant case are not analogous to the defects inherent in the misaligned form at issue in Dillard.  Compare 221 F. Supp. 3d at 680, with supra at 16.  The disclosure at issue in Dillard provided a specific date for each of the monthly- or weekly-scheduled payments.  See 221 F. Supp. 3d at 680.  Plaintiff's Agreement contains only one date and two sets of payments and omits any date information for the final payment.  (ECF No. 1-1.)  The challenge to the payment schedule in Dillard arose out of the payment schedule's poor alignment, not the form's omission of key dates or the meaning of terms used in the payment schedule.  See 221 F. Supp. 3d at 680.  The payment schedule at issue also employs an

ambiguous term, which the form at issue in <u>Dillard</u> did not.  <u>Id.</u>  <u>Dillard</u>'s findings are therefore inapposite to the Agreement's payment schedule.

Defendant finally argues that Plaintiff "has not identified **two plausible** interpretations of Defendant's TILA disclosure, and Defendant submits that the only plausible interpretation is the simple, and clear, explanation that the seventy-second payment is different only in amount, and not in timing, as the first seventy-one payments."  (ECF No. 28 at PageID 168 (emphasis in original).)  Defendant asserts that, "[a]bsent a reasonable consumer being able to plausibly interpret a TILA disclosure in more than one way, there is no violation."  (<u>Id.</u>)  As stated <u>supra</u>, the Court disagrees with Defendant's assertion that there is only one "simple and clear" interpretation of the payment schedule.  The Court also will not dismiss Plaintiff's claim solely because Plaintiff has not expressly offered two reasonable interpretations of the payment schedule.  Defendant cites to two cases, including <u>Dillard</u>, for the proposition that a violation can only be shown if a reasonable consumer could "plausibly interpret a TILA disclosure in more than one way[.]"  (<u>Id.</u> (citing <u>Handy v. Anchor Morg. Corp.</u>, 464 F.3d 760, 764 (7th Cir. 2006); <u>Dillard</u>, 221 F. Supp. 3d at 682).)

Neither of these cases impose such a requirement.  <u>Handy</u> only provides that an objective standard governs the sufficiency of a TILA disclosure.  <u>See</u> 464 F.3d at 764 ("The sufficiency of TILA-mandated disclosures is determined from the standpoint of the ordinary consumer." (quoting <u>Rivera v. Grossinger Autoplex, Inc.</u>, 274 F.3d 1118, 1121–22 (7th Cir. 2001))).  <u>Dillard</u> also does not support the conclusion that a plaintiff must provide two reasonable interpretations to succeed on her TILA claim.  <u>Dillard</u> held that "[i]f a reasonable consumer could plausibly interpret a TILA disclosure in more than one way, the lender has not complied with the TILA." 221 F. Supp. 3d at 682.  That statement, however, only indicates that demonstrating that a

reasonable consumer could plausibly interpret the same disclosure in two separate ways is *sufficient* to prove a TILA violation.  Dillard in no way makes such a showing *necessary* to prove a TILA violation.  Taking Defendant's argument to its extreme would lead to the illogical result whereby a plaintiff would fail to prove a TILA violation when a creditor provides a completely ambiguous and illegible disclosure because she could not provide *any* plausible interpretation for a term, let alone one or two.  Moreover, allowing a defendant to defeat an otherwise meritorious claim based solely on the plaintiff's failure to provide an additional, countervailing interpretation to the one offered by the defendant in response to a motion for summary judgment would cut against the requirement that the Court construe all inferences in favor of the debtor.  See Begala, 163 F.3d at 950.

In summary, the Court finds that no genuine dispute of material fact exists as to whether the Agreement's payment schedule violated the disclosure requirements of the TILA.  The undisputed facts establish that Defendant failed to provide a date for the irregular payment in the Agreement's payment schedule.

Plaintiff is entitled to statutory damages of twice the Agreement's finance charge, unless it would exceed the $2,000 statutory cap on damages under the TILA.  See 15 U.S.C. § 1640(a)(2)(A)(i).  The finance charge in this case is $2,370.43.  (ECF No. 1-1 at PageID 9.) Given that double that amount will necessarily exceed the statutory maximum, the Court will award Plaintiff $2,000 in damages.

V.      **CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.  Plaintiff is awarded $2,000 in statutory damages.

**SO ORDERED**, this 19th day of August, 2020.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE